# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RUSGO AND DEPANICI'S, INC.,      )
individually and as the          )
representative of a class of     )
similarly situated persons,      )
                                 )
        Plaintiff,                )    No. 16-CV-12966
                                 )
        v.                        )
                                 )
WALTER J. SVENKESEN              )
INSURANCE AGENCY, INC.,          )
D/B/A VIKING INSURANCE           )
AGENCY and WALTER J.             )
SVENKESEN,                       )
                                 )
        Defendants.               )

## PLAINTIFF'S UNOPPOSED BRIEF IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

Mark K. Wasvary
MARK K. WASVARY, P.C.
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
Telephone: 248-649-5667

Phillip A. Bock
David M. Oppenheim
BOCK, HATCH, LEWIS &
OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500

TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................i

INDEX OF EXHIBITS ............................................................. iii

INDEX OF AUTHORITIES ........................................................iv

STATEMENT OF THE ISSUES..................................................x

CONTROLLING AUTHORITY ...................................................xi

INTRODUCTION ......................................................................1

    I.    Preliminary approval and dissemination of notice. ...................1

    II.    Background and summary of settlement. ...................................2

    III.   The Settlement Class was notified about the settlement..........7

ARGUMENT ............................................................................9

    I.    The Court should approve the Settlement. ...............................9

      A. Standard for judicial evaluation and approval. .........................9

      B. Factors to be considered in determining whether a
        settlement is fair, reasonable, and adequate. ...........................10

          1. The risk of fraud or collusion. ..........................................11

          2. The complexity, expense and likely duration of the
            litigation.......................................................................11

          3. The amount of discovery. .................................................12

          4. Likelihood of success on the merits. .................................13

          5. Opinion of Class Counsel and Class Representative.......14

          6. The reaction of absent class members.............................16

          7. The public interest...........................................................17

    II.    Attorneys' fees and costs from the Settlement Fund are
        fair, reasonable, and appropriate...........................................17

      A. The Court should approve Defendant and the Insurers'
        agreement to pay Class Counsel a percentage of the
        Settlement Fund as attorney's fees. ........................................18

B. The requested fees are within the market rate for this type of case. ...................................................................22

III. The Court should approve the agreed incentive payment to Plaintiff. ...................................................................26

CONCLUSION ........................................................................29

CERTIFICATE OF SERVICE................................................30

## INDEX OF EXHIBITS

Declaration of Dorothy Sue Merryman ................................................... A

# INDEX OF AUTHORITIES

## Cases

*A & L Indus., Inc. v. P. Cipollini, Inc.,* 12-07598, 2013 WL 5503303 (D. N.J. 2013) ............................................................... 17

*Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D.Tenn. Jan. 6, 1978) ...................................... 31

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* Case No. 09-cv-1162 (W.D. Mich. July 24, 2012), *affirmed by* 757 F.3d 540 (6th Cir. 2014) ................................... 16

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) .............. 33

*Avio Inc. v. Creative Office Solutions, Inc.,* 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) ............................................. 33

*Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 640 F.Supp. 697 (S.D. Ohio 1986) ...................................................... 25

*Bennett v. Roark Capital Group, Inc.,* Case No. 2:09-cv-00421, 2011 WL 1703447 (D. Maine, 2011) ................................ 31

*Blum v. Stenson,* 465 U.S. 886 (1984) ........................................... 23

*Brent v. Midland Funding, LLC,* 2011 WL 3862363 (N.D. Ohio 2011) ......................................................................................... 12

*Brotherton v. Cleveland,* 141 F.Supp.2d 907 (S.D. Ohio 2001)..... 25

*CE Design v. Cy's Crab House North, Inc., et al.,* 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (Sept. 9, 2009) ....................... 18

*CE Design, Ltd. v. King Architectural Metals, Inc.,* No. 09 C 2057, 2010 WL 5146641 (N.D. Ill. Dec. 13, 2010), *reversed on other grounds, CE Design, Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 723-24 (7th Cir. 2011).................... 18

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.,* 296 F.R.D. 299 (D. N.J. 2013) ..................................................... 17

*Compressors Engineering Corp. v. Thomas*, Case No. 10-CV-10059 (E.D. Mich. Apr. 20, 2011) ............................................... 16

*Cook v. Niedert, et al.*, 142 F.3d 1004 (7th Cir. 1998) ............. 37, 38

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................... 13

*Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ......................................................... 17

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............................... 18

*G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010) ......................................... 19

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ............................ 32

*GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486 (1st Dist. 1992) ................................................................................... 39

*Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill., June 22, 2009) ................ 19

*Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa. Aug. 6, 2015) ................................................................................... 34

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................... 35

*Hinman v. M & M Rentals*, 545 F.Supp.2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008) ........................................... 19

*Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F.Supp. 1130 (N.D. Ill. 1997) ................................ 21

*Howes v. Atkins*, 668 F.Supp. 1021 (E.D.Ky.1987) ...................... 31

*Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012) ............................................ 16

*Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) ...................... 32

*In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D.Cal.1989) ...... 26

*In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 163 (S.D.N.Y. 2000) ................................................. 21

*In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ............................................... 35

*In re Cincinnati Gas & Elec.*, 643 F.Supp. 148 (S.D.Ohio 1986) .................................................................................. 30

*In re Continental Illinois Securities Litig.*, 962 F.2d 566 (7th Cir. 1992 ...................................................................... 37

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) .......................................................... 13

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) .................................. 38

*In re Lupron Mktg. and Sales Practice Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) ......... 39

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2001) ............................................................ 20

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) 30, 38

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D.Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir.2001) ........ 30

*In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) ................................................ 21

*In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir.2005) ................................................................... 25, 26

*In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985 (S.D.Ohio 2001) ................................................................. 30

*In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F. 295 (1st Cir. 1995) ...................... 24

*Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ................................................................... 10, 12

*Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ......................................................... 22

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...................... 10

*Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 5, 2015)....................................16, 33

*Johnson v. Midwest Logistics Systems, Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013)..............................................29

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D.Mich.2000) .......................................................................29

*Maher v. Zapata Corp.*, 714 F. 2d 436 (5th Cir. 1983)....................8

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985)..........................35

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) ...................................................................................20

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007)..............................................................................27

*Moulton v. U. S. Steel Corp.*, 581 F. 3d 344 (6th Cir. 2009)..........37

*Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010).............................................................19

*Poertner v. Gillette Co.*, 618 Fed.Appx. 624 (11th Cir. 2015) .......28

*Rawlings v. Prudential–Bach Props., Inc.*, 9 F.3d 513 (6th Cir.1993)................................................................................25

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......12

*Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) ................................................34

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) .........................33

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis. July 19, 2013)...................................34

*Schlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) .........................21

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012) ..............................................17

*Stanley v. U.S. Steel Co.*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ...................................................................................25

*Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir. 1972).......11

*Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp.2d 894 (N.D. Ill. 2010)....................................20

*Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005).................31

*The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) .....................................................34

*US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013) ...............24

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012)........................16

*Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich. July 30, 2015) ...............................................................33

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983)...........................................................................8

*Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999)..................................................................28

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) .....................................................................................22

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997)..........................................................................28

## Statutes

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...................2

## Rules

Fed. R. Civ. P. 23 (c) (2) (B)..................................................8

Fed. R. Civ. P. 23 (e) (1) ......................................................7

Fed. R. Civ. P. 23 (e) (1) (C) ................................................9

## Treatises

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002).....................................21

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005)..............................................8

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS
   ACTIONS, § 13:80 (4th ed. Updated June 2008) .........................23

C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR
   PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June
   1990) ......................................................................................28

Manual for Complex Litigation, Fourth § 14.121 (2004)..............20

Manual for Complex Litigation, Third, § 30.42 (1995).................10

## STATEMENT OF THE ISSUES

1.      Whether the Settlement Agreement is fair, reasonable, and adequate to the class members.

2.      Whether the Parties' agreed incentive award to Rusgo and Depanici's, Inc. is fair and reasonable.

3.      Whether the Parties' agreement to pay Class Counsel one-third of the Settlement Fund plus expenses of $15,000.00 is fair, reasonable, and within the market rate for contingent fee, consumer class actions of this sort.

## CONTROLLING AUTHORITY

- Federal Rule of Civil Procedure 23

- *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007)

- *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974)

- *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)

- *Blum v. Stenson,* 465 U.S. 886 (1984)

Plaintiff, Rusgo and Depanici's, Inc. ("Plaintiff"), on behalf of itself and the settlement class of similarly-situated persons ("Settlement Class" or "Class"), requests that the Court enter an order finally approving the parties' Settlement Agreement ("Settlement" or "Agreement.")

## INTRODUCTION

After notice to all Class members was sent, no Class member has objected or requested to be excluded from the Settlement. Further, notice was sent to the U.S. and Michigan state attorney general and neither of them objected. Because the Settlement is fair, reasonable, and adequate, the Court should grant final approval to it. The proposed order is submitted with this brief as <u>Exhibit A</u>.

## I.   Preliminary approval and dissemination of notice.

On July 5, 2017, after consideration of the Settlement Agreement and plan of notice, the Court entered an order preliminarily approving the Settlement and approving the class notice ("Preliminary Approval Order.") Doc. 29. In accordance with that Order, Plaintiff caused the class notice to be sent on July 7, 2017. Affidavit of Dorothy Sue

Merryman. <u>Exhibit A</u>. No members of the Class objected to the Settlement or chose to be excluded. <u>Id</u>.

## II.   Background and summary of settlement.

Plaintiff filed this case alleging that Defendants Walter J. Svenkesen Insurance Agency, Inc. d/b/a Viking Insurance Agency ("Defendants") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and FCC regulations by faxing advertisements to Plaintiff and a class of similarly-situated persons without their prior express invitation or permission.

Defendant denied liability to Plaintiff and the other Class members on a variety of legal and factual grounds. Based on discovery, Plaintiff has determined that Defendants' form advertisements were sent to at least 683 fax numbers belonging to persons in Michigan.

Defendants have little ability to pay a settlement or judgment other than through their insurance policies. Defendants have policies with Secura Insurance Company ("Secura") and Admiral Insurance Company ("Admiral") (collectively, the "Insurers"). Both Insurers have raised coverage defenses, and Secura has initiated a declaratory judgment action to determine coverage.

The Parties engaged in settlement negotiations. Following a mediation conducted by independent mediator Thomas Peters of Vanderveer Garzia, P.C., the parties and the insurers negotiated a formal, written settlement agreement, proposed court orders, and proposed notice to the absent class members and have submitted that Agreement to the Court.

As Defendant lacks assets to pay a settlement or a judgment in this matter other than through its liability insurance, the Settlement Fund is being provided by its insurers.  Without admitting or conceding fault or liability, Defendant has agreed to settle the claims by making $683,000.00 available to fund the Settlement ("Settlement Fund"). The Settlement Fund will be available to pay Class member claims, to pay an incentive award to Plaintiff for serving as the Class Representative, and to pay fees and out-of-pocket litigation expenses to Class Counsel.

The Settlement was negotiated among the Parties, through counsel, in good faith, and at arms'-length. It will resolve this suit entirely.

The key terms of the Agreement are as follows:

a.   <u>Certification of a Settlement Class</u>. Pursuant to the Agreement, the Court has preliminarily certified a Rule 23 (b) (3) "Settlement Class" defined as, "Each person, including but not limited to the lists of persons produced by Defendants totaling 683 fax numbers, that was sent one or more telephone facsimile messages through faxbb.com from June through September, 2016 promoting the availability or quality of property, goods, or services offered by 'Viking Insurance,' but not stating on its first page that the recipient may make a request to the sender not to send any future ads and that failure to comply with such a request within 30 days is unlawful." Excluded from the Settlement Class are Defendants and the Insurers, including any of their parents, subsidiaries, affiliates, or controlled persons, as well as their officers, directors, agents, servants, employees, as well as their officers, directors, agents, servants, and employees, and the immediate family members of such individuals. Doc. 29.

b.   <u>The Class Representative and Class Counsel</u>. The Court has appointed Plaintiff as the Class Representative and

Plaintiff's attorney (Phillip A. Bock of Bock & Hatch, LLC) as
Class Counsel for the Settlement Class. *Id.*

      c.    <u>Monetary Relief to the Members of the Settlement
Class</u>. Defendant, by and through its Insurers, has agreed to make
available a total of $683,000.00 (the "Settlement Fund") to pay
valid class member claims, to pay an incentive payment to
Plaintiff, to pay attorney's fees and reasonable litigation expenses,
not limited to costs, to Class Counsel as approved by the Court.
Any money left in the Settlement Fund after payments to claiming
class members, to the Class Representative, and to Class Counsel
would revert to and be kept by Defendant and its Insurer. Doc. 24-
1 at ¶ 7.

      d.    <u>Class Notice</u>. The parties notified the Settlement Class
about the settlement by sending the notice and claim form by
facsimile to the telephone numbers involved in this case, by U.S.
Mail to class members whose facsimile notice fails after three
attempts, and by publishing the notice and claim form on the
claims administrator's website. <u>Exhibit A</u>. The notice included
instructions about opting out, objecting, or submitting a claim

form by fax or mail to the Claims Administrator or through the

website, and includes Class Counsel's direct dial telephone

number for people to call with questions. *Id.*, ¶ 8 and Exhibit 1

thereto.

      e.   <u>Claims</u>. The class notice included a simple, one-page

claim form for submitting claims for cash payments. <u>Exhibit A</u>.

The claim form submitted by each class member must be signed

and affirm that the fax number identified by Defendants' records

as having been sent one or more advertisements was the class

member's fax number during the Class Period. A class member

submitting a timely and valid Claim Form will receive a cash

payment of the lesser of $1,000.00 per fax sent to that fax number

(per Defendants' records) or a *pro rata* share of the Settlement

Fund after the other payments required by the Agreement. The

$1,000.00 is twice the base statutory damages available under the

TCPA. The claimant need not possess the junk fax at issue, need

not remember receiving the junk fax at issue, and need not know

anything about Defendants. Rather, the claimant must merely

identify himself or herself as a member of the Settlement Class by

verifying ownership of the targeted fax number(s) during June-September 2016. Doc. 24-1, ¶ 9.

f.   <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendants and the other released parties about Defendants' advertisements sent by fax during the Class Period. *Id.*, ¶ 16.

g.   <u>Attorney's Fees and Costs and Class Representative Award</u>. Class Counsel requests, and Defendant does not oppose, an award of attorney's fees equal to (a) one-third of the Settlement Fund ($227,666.67), plus reasonable out-of-pocket expenses not to exceed $15,000.00. Class Counsel requests, and Defendant does not oppose, an award of $15,000.00 to plaintiff, Rusgo & Depanici's, Inc., for serving as the class representative.

## III.   The Settlement Class was notified about the settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due

process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983);

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir.

1983). The Court is vested with wide discretion both as to the manner

in which notice is given and the form that notice is to take. 7B Charles

Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed.

2005). Here, in compliance with the Court's Orders, Plaintiff caused the

notice to be sent by fax and U.S. Mail to the Class members revealed

through discovery to have been sent a fax by Defendant. Exhibit A.

In this case, notice by fax is the best practicable notice available.

Through discovery, Plaintiff was able to obtain the fax numbers of

persons and entities who received faxes from Defendant in February

2006. The Court was correct in ordering notice by fax. This method of

notice comports with the due process obligations under Rule 23 and is

the best method of notice available. This allowed for maximum reach to

the class members.

Moreover, the content of the parties' Notice complied with Rule 23

(c) (2) (B), which requires that the notice "must clearly and concisely

state in plain, easily understood language: (i) the nature of the action;

(ii) the definition of the class certified; (iii) the class claims, issues, or

defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all of those things. Exhibit A, Ex. 1.

Further, the Claim form at issue here was an easy to read and understand 1-page form. *Id.* Each Settlement Class Member merely had to provide their contact information and then verify ownership of the subject fax number during the class period. *Id.* The Settlement Class members did not have to provide copies of the subject fax, or attest to remember receiving the subject fax.

## ARGUMENT

I.   The Court should approve the Settlement.

    A.   Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C); *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). It is well-established

that there is an overriding public interest in settling and quieting

litigation, and this is particularly true in class actions. *See Isby v.*

*Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally

favor the settlement of class action litigation."). "[A] presumption of

fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable

counsel after meaningful discovery." Manual for Complex Litigation,

Third, § 30.42 (1995). *See also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d

1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise

and settlement of disputes.").

>    **B.    Factors to be considered in determining whether a
>    settlement is fair, reasonable, and adequate.**

Courts typically consider the following factors in evaluating a

class action settlement: "(1) the risk of fraud or collusion; (2) the

complexity, expense and likely duration of the litigation; (3) the amount

of discovery engaged in by the parties; (4) the likelihood of success on

the merits; (5) the opinions of class counsel and the class

representatives; (6) the reaction of absent class members; and (7) the

public interest." *Brent v. Midland Funding, LLC,* 2011 WL 3862363 at

*12 (N.D. Ohio 2011), *citing Int'l Union,* 497 F.3d at 632. Here, these factors show the settlement should be approved.

### 1. The risk of fraud or collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record proves that the Settlement is not the product of collusion. Settlement was reached only after discovery on both the merits and Defendant's ability to pay. The Settlement was the result of arms-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions. Therefore, there is no indication that this Settlement was the product of collusion.

### 2. The complexity, expense and likely duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)). There is no exception here. Had the case proceeded, Defendant would

have contested class certification and the merits based on the incomplete records of its faxing activity available. In addition, both insurers were actively contesting their coverage obligations.

Defendant and its Insurers have agreed to avoid the risks and costs of pursuing recovery of the judgment from the insurance policies by making the Settlement Fund available to the Class. This Settlement permits the Class to obtain cash payments from the Settlement Fund without the risks and costs of further litigation.

### 3. The amount of discovery.

The parties engaged in informal discovery in this case sufficient for the Parties to be aware of the relevant facts and issues present here, which allowed them to make an informed decision prior to agreeing to the settlement terms. Therefore, the stage of proceedings and amount of discovery supports final approval. The members of the Class were notified in the best practicable manner; direct notice was sent by fax. The Parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

### 4. Likelihood of success on the merits.

Defendant has shown that it lacks the means to pay a substantial judgment in favor of the Class other than through their insurance policies. To avoid the risk and uncertainty of this litigation (as well as any insurance coverage issues), the Insurers have agreed to make available a Settlement Fund of $683,000.00—representing TCPA statutory damages of $1,000.00 times the 683 faxes at issue. Doc. 24-1, ¶ 7. Every Class member had an opportunity to submit a claim by establishing that they owned the fax number on the relevant date in order to obtain the full $1,000.00 per fax, or their *pro rata* share.

Due to the risks and expenses involved in litigating this action and the insurance coverage actions, and the lofty costs of pursing an inevitable appeal, reaching this Settlement is a fair, reasonable, and adequate result for the Class. Every class member can recover their full damages by submitting a simple one page claim form. Therefore, this Settlement is an excellent result when comparing the strength of the case to the settlement amount.

5.    Opinion of Class Counsel and Class Representative.

Plaintiff and its counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have substantial experience litigating class actions, claims about unsolicited faxes, and about insurance coverage issues. They have been appointed class counsel in dozens of cases. *See, e.g., American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. July 24, 2012), *affirmed by* 757 F.3d 540 (6th Cir. 2014); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich.); *Compressors Engineering Corp. v. Thomas*, Case No. 10-CV-10059 (E.D. Mich. Apr. 20, 2011); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012); *Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299 (D. N.J. 2013); *A & L*

14

*Indus., Inc. v. P. Cipollini, Inc.*, 12-07598, 2013 WL 5503303 (D. N.J. 2013); *CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (Sept. 9, 2009); *CE Design, Ltd. v. King Architectural Metals, Inc.*, No. 09 C 2057, 2010 WL 5146641, *6 (N.D. Ill. Dec. 13, 2010), *reversed on other grounds, CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010); *Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill., June 22, 2009); *Hinman v. M & M Rentals*, 545 F.Supp.2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008); *Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp.2d 894 (N.D. Ill. 2010).

Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

6.     The reaction of absent class members.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, the Class members overwhelmingly support the settlement. This is evidenced by the fact that no Class members objected to the settlement or chose to be excluded. Exhibit A. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F.Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141

(W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement").

### 7.   The public interest.

Courts have held that a settlement of class action litigation serves the public interest. *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007). Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed Settlement.

## II.   Attorneys' fees and costs from the Settlement Fund are fair, reasonable, and appropriate.

Under the terms of the Agreement, Class Counsel will be paid one-third of the Settlement Fund ($227,666.67) as attorneys' fees, plus their out-of-pocket litigation expense of up to $15,000.00. Doc. 24-1, ¶10. Defendant does not object to Plaintiff's requests for these amounts. *Id.*

The attorneys undertook the case on a contingency basis and made a fund of money available to pay the class. It is well recognized that the attorneys' contingent risk is an important factor in determining the fee award. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974). It is well-settled that the attorneys who create a benefit

for class members are entitled to compensation for their services. *Brent,* 2011 WL 3862363 at *19. The Court should approve this agreement, to which no one objects.

### A.   The Court should approve Defendant and the Insurers' agreement to pay Class Counsel a percentage of the Settlement Fund as attorney's fees.

It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The U.S. Supreme Court has noted that in settlement fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").

"This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'" *McCutchen*, 133 S.Ct. at 1550, *quoting Boeing*, 444 U.S. at 478. Moreover, the percentage of the fund method in a common fund settlement is appropriate as it "enhances efficiency" and "it better approximates the

18

workings of the marketplace." *In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F. 295, 307 (1st Cir. 1995).

"[T]he Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases.'" *Stanley v. U.S. Steel Co.*, 2009 WL 4646647 at *1 (E.D. Mich. Dec. 8, 2009), *quoting Rawlings v. Prudential–Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir.1993); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir.2005). "Particularly, where counsel's efforts create a substantial common fund for the benefit of the class, they are entitled to payment from the fund based on a percentage of that fund." *Id., citing Brotherton v. Cleveland*, 141 F.Supp.2d 907, 909 (S.D. Ohio 2001); *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 640 F.Supp. 697 (S.D. Ohio 1986). "This 'allows a Court to prevent ... inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.'" *Id., quoting Boeing*, 444 U.S. at 478.

"Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience

undue delay in receiving their share of the settlement." *Id.*, *citing In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D.Cal.1989); Manual for Complex Litigation, Fourth § 14.121 (2004).

In *Boeing*, 444 U.S. 472, 480 (1980), the Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." "[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479.

The fee award is based upon the entire fund available to be claimed, even if a portion of the fund is not claimed by class members and the unclaimed remainder reverts to the defendant. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Poertner v. Gillette Co.*, 618

Fed.Appx. 624, 626 (11th Cir. 2015) (same); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (same); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *See also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002).

Here, as in *Boeing*, the Class members were sent a Class Notice with an attached claim form that would enable them "to share the harvest of the lawsuit upon proof of their identity." By identifying themselves and stating that they owned/held the fax number in question during the class period (the dates when Defendant' advertisements were sent), they would receive their share of the Settlement Fund, without any need to prove up their claim, possess a copy of Defendant's "junk fax," or remember receiving any fax from Defendant. Because the attorney's fees is based on the total benefit, and not on the valid claims submitted, the Court should approve Defendant' agreement to pay Plaintiff's counsel attorney's fees based upon the Settlement Amount of $683,000.00.

### B.   The requested fees are within the market rate for this type of case.

As discussed, the agreement calls for a one-third fee. That percentage falls within the approved range in class actions generally. *See Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D.Mich.2000) (approving fees of 33% of the settlement fund); *Johnson v. Midwest Logistics Systems, Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (same); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass., 2005) (same); *In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1046 (S.D.Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D.Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir.2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *In re Cincinnati Gas & Elec.*, 643 F.Supp. 148, 150 (S.D.Ohio 1986); *In re Cincinnati Microwave*, No. C–1–95–905 (30% plus expenses); *Howes v. Atkins*, 668 F.Supp. 1021 (E.D.Ky.1987) (40%); *Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D.Tenn. Jan. 6, 1978) (35.8%); *Bennett v. Roark Capital Group, Inc.*, Case No.

22

2:09-cv-00421, 2011 WL 1703447 at *2 (D. Maine, 2011) (33% of fund "reflects a fee that is customary."); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions*); Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees). See also ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million).

Moreover, that percentage falls within the market rate of TCPA cases. *See Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (one third fee); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 5, 2015) (Tarnow, J.) (same); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (awarding one third of fund); *American Copper &*

*Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (same); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis. July 19, 2013) (35% fee).

Here, the Class Notice informed the Settlement Class about the attorneys' fees and no Class member objected. Courts have recognized the lack of objections from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the Defendant want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

In sum, Class counsel undertook this case on a contingency basis. Class Counsel have been litigating TCPA class actions and the resulting coverage actions since 2003, and have litigated other types of class actions for many more years. In this case, they were able to apply their unique capabilities to achieve an excellent result in a fair and efficient

manner. They always faced risk of nonpayment, not only for their time, but also for their out-of-pocket costs. The Court should approve the agreement to pay them attorneys' fees of $227,666.67, plus expenses of $15,000.00 (including the cost of administration) because that amount is within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances.

## III.   The Court should approve the agreed incentive payment to Plaintiff.

Additionally, the Court should approve the Parties' agreement that Plaintiff will receive $15,000.00 from the Settlement Fund as an incentive award for serving as the Class Representative. Such awards are appropriate to reward class representatives who have pursued claims on behalf of the class. *Moulton v. U. S. Steel Corp.,* 581 F. 3d 344, 351-52 (6th Cir. 2009); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992. "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving class incentive awards of $8,000, $9,000, and $14,000); *Cook,* 142 F.3d at 1016 (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives). In *In re Lupron*, the court noted that incentive awards serve an important function:

> Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation. *Denny v. Jenkins & Gilchrist*, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005). Courts 'routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation.' *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2000). 'Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.' *In re*

*Compact Disc*, 292 F. Supp. 2d at 189. [*In re Lupron Mktg. and Sales Practice Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at \*7 (D. Mass. Aug. 17, 2005)]

Here, the Parties agreed to an incentive award similar to those awarded in other TCPA cases. *See Imhoff* ($15,000 award); *Jackson's* (same); *Wagner* (same); *Heel* (same); *Siding & Insulation* (same); *Hawk Valley* (same); *Trynex* (same).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992), *citing* C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representative in this case was no exception. But for Plaintiff's initiative and participation, the benefits available to the Class members would not have been realized. The Court should approve the parties' agreement regarding Plaintiff's incentive payment, and award the requested amount.

## CONCLUSION

The Court should approve the Settlement as fair, reasonable, and

adequate and in the best interests of the settling parties and the Class.

> Respectfully submitted,
> RUSGO AND DEPANICI'S,
> INC., individually and as the
> representative of a class of
> similarly situated persons,
>
> /s/ David M. Oppenheim
> One of Plaintiff's Attorneys

Mark K. Wasvary                     Phillip A. Bock
MARK K. WASVARY, P.C.               David M. Oppenheim
2401 W. Big Beaver Rd., Suite 100   BOCK, HATCH, LEWIS &
Troy, MI 48084                      OPPENHEIM, LLC
Telephone: 248-649-5667             134 N. La Salle St., Ste. 1000
                                    Chicago, IL 60602
                                    Telephone: 312-658-5500

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on September 12, 2017, he caused the foregoing to be filed using the Court's CM/ECF system, which automatically serves a copy on all counsel of record.

/s/ David M. Oppenheim